## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-00114-SCT

*LILA JO KIRKLAND*

*v.*

*BILLY D. KIRKLAND*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

**MEMORANDUM/PER CURIAM AFFIRMANCE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/94 |
| TRIAL JUDGE: | HON. KENNETH BARKLEY ROBERTSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID C. FRAZIER |
| ATTORNEY FOR APPELLEE: | MARK V. KNIGHTEN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 9/4/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS

Billy and Lila Kirkland were married on August 17, 1985. At that time, Mr. Kirkland was recovering from bankruptcy, and Mrs. Kirkland was employed as a Special Education Teacher and Counselor at both Moss Point and Pascagoula High Schools. Mr. Kirkland began working at International Paper and worked there throughout the marriage. As of the time of trial, Mrs. Kirkland's salary was $36,000 and her vested retirement was approximately $16,000. Mr. Kirkland's vested retirement at International Paper Company was $67,570.72. Each of these retirement plans was funded by payroll deductions from Mr. and Mrs. Kirkland respectively.

In addition to their retirement accounts, the Kirklands had a joint investment account with A.G. Edwards & Sons, Inc., opened on April 21, 1989. Mr. Kirkland also maintained separate accounts for each of his two minor children by a prior marriage, Lashaundra and Melissa. These separate custodial

accounts were funded by periodic drafts from the couple's joint checking account. The balances on these accounts fluctuated, but prior to the separation and divorce they had been largely drained.

The other assets of the Kirklands consisted of their personal property, vehicles and two houses. The marital domicile was valued by the parties at approximately $37,000, with an outstanding mortgage of $33,000. The other house, a rental unit, was valued by the Kirklands at around $29,000, with a mortgage of $24,000.

Mr. and Mrs. Kirkland separated on or about January 19, 1994. They entered into a consent agreement to divorce on the grounds of irreconcilable differences, while leaving it to the chancellor to equitably divide the property. Mrs. Kirkland was granted the family home, with responsibility for the remaining mortgage and payments; $1,700 as reimbursement for her one-half of the down payment on the family home; payment of $2,500 for her equity in the rental home; $2,000 in lump-sum alimony; and her own vehicle and personal property. Mr. Kirkland retained the rental home, his vehicle and personal property. The chancellor left Mr. and Mrs. Kirkland's respective retirement accounts intact. Additionally, the chancellor awarded costs of the divorce proceeding to Mrs. Kirkland, but denied her request for attorney's fees. Aggrieved by the chancellor's division of the property, Mrs. Kirkland filed timely notice of appeal, presenting the following issues for our consideration:

> **I. WHETHER THE LOWER COURT ERRED IN REFUSING TO MAKE AN EQUITABLE DISTRIBUTION OF THE RETIREMENT BENEFIT ASSETS OF THE PARTIES.**
>
> **II. WHETHER THE LOWER COURT ERRED IN FAILING TO MAKE AN EQUITABLE DISTRIBUTION OF THE FINANCIAL INVESTMENT ACCOUNTS AND DEBTS OF THE PARTIES.**
>
> **III. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT TO THE APPELLANT REASONABLE ATTORNEY FEES.**

## STANDARD OF REVIEW

This Court's scope of review in domestic relations matters is limited. ***Crow v. Crow***, 622 So. 2d 1226 (Miss. 1993). Where a trial judge sits without a jury, this Court will not disturb his factual determinations where substantial evidence supports the chancellor's decision. Put another way, this Court must affirm a chancellor on a question of fact unless, upon review of the record, we are left with the firm and definite view that a mistake has been made. ***Rice Researchers, Inc. v. Hiter***, 512 So. 2d 1259, 1264 (Miss. 1987) (citations omitted). With this narrow standard of review in mind, Mrs. Kirkland's assignments of error will be addressed *seriatim*.

## ASSIGNMENT OF ERROR NO. I.

> **WHETHER THE LOWER COURT ERRED IN REFUSING TO MAKE AN EQUITABLE DISTRIBUTION OF THE RETIREMENT BENEFIT ASSETS OF THE PARTIES.**

Mrs. Kirkland argues that the chancellor erred in refusing to grant Mrs. Kirkland some interest in Mr.

Kirkland's retirement account. Mrs. Kirkland correctly relies on the numerous cases which stand for the proposition that a chancellor has the authority to order an equitable division of marital assets that were accumulated through the joint efforts and contributions of the parties. *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). Mrs. Kirkland's argument however, overlooks the element of discretion inherent in any division of marital property.

While the chancellor certainly has the *power* to grant an interest in pensions and retirements, Mississippi law does not *require* the chancellor to do so. Mississippi is not a community property state. *Parker v. Parker*, 641 So. 2d 1133 (Miss. 1994), citing *Dillon v. Dillon*, 498 So. 2d 328 (Miss. 1986). A spouse is not automatically entitled to an equal division of jointly accumulated properties. The matter is left to the discretion of the court. *Brown v. Brown*, 574 So. 2d 688, 691 (Miss. 1990).

The guidelines stated by this Court in *Ferguson* and its progeny indubitably include the ability to invade retirement and pension plans as within the arsenal of the chancellor's equitable powers, but this only begins the inquiry. The question is not whether the chancellor can reach retirement assets, but whether such invasion is desirable and equitable in light of the other elements of the *Ferguson* formula. As this Court stated in *Savelle v. Savelle:*

> "[t]he chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). This division does not require an automatic fifty-fifty split or a vested right in the other spouse's pension plan. When dividing marital assets between divorcing parties, the chancellor must have foremost in his mind fundamental fairness. "Where one spouse has contributed directly to the fund, by virtue of his/her labor, while the other has contributed indirectly, by virtue of domestic services and/or earned income which both parties have enjoyed rather than invested, the spouse without the retirement funds in his/her own name could instead have been working outside the home and/or investing his/her wages in preparation for his/her own retirement." *Id.* at 934.

*Savelle v. Savelle*, 650 So. 2d 476, 479 (Miss. 1995). Given the complexity and fact-specific nature of such an inquiry, this Court has left it squarely within the discretionary domain of the chancellor, who sits on the front line of the dispute. Examining the record before the Court, it is clear that the chancellor in the instant case did not abuse his discretion.

This is not a case where one spouse has stayed at home rendering domestic services, in lieu of entering the workforce and accumulating personal retirement benefits. Both Mr. and Mrs. Kirkland have retirement pension plans, and each contributed to those respective plans by payroll deductions from their paychecks. Mrs. Kirkland asserts that, "but for" her contributions to the marital estate, Mr. Kirkland could not have saved the retirement money in his pension account. While this may be true, it follows that this sword cuts both ways, and that Mr. Kirkland's undisputed contributions to the marital estate enabled Mrs. Kirkland to save to her pension fund as well.

Mrs. Kirkland asserts, however, that Mr. Kirkland squandered substantial sums on gambling prior to the separation of the parties, presumably leading her to invest much more heavily into the marital estate to the detriment of her own retirement prospects. This argument, was fully developed before the chancellor. After evaluating the evidence, the chancellor stated, "It would not be reasonable to try

to invade the two retirement programs, the marriage has been too short and the uncertainty of the amount that would be received at some future date makes the whole thing impractical." The chancellor clearly considered the evidence before him in making his decision to equitably divide the parties' property without invading the pension plans, and this Court is not prepared to say that the chancellor abused his discretion in refusing to award Mr. or Mrs. Kirkland a portion of each other's retirement.

## ASSIGNMENT OF ERROR NO. II.

### WHETHER THE LOWER COURT ERRED IN FAILING TO MAKE AN EQUITABLE DISTRIBUTION OF THE FINANCIAL INVESTMENT ACCOUNTS AND DEBTS OF THE PARTIES.

The crux of the appellant's contention on this issue is that Mr. Kirkland improperly squandered the assets of various investment accounts in order to satisfy gambling debts. This assertion was sharply contested by Mr. Kirkland, however, and is countered by evidence on the record that Mr. Kirkland spent the money to discharge mutual debts. Furthermore, there was evidence that Mrs. Kirkland herself had been gambling.

Ascribing relative weight and credibility to the various facts alleged by the parties is the function of the chancellor. In this case the chancellor noted, "There was a lot of testimony regarding investments, stocks, credit cards, gambling debts, salaries and retirement plans", and decided to award Mrs. Kirkland $2,000 in lump-sum alimony. This Court is not inclined to substitute its judgment for that of the chancellor.

## ASSIGNMENT OF ERROR NO. III

### WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT TO THE APPELLANT REASONABLE ATTORNEY FEES.

This Court stated in *Creekmore v. Creekmore* that "attorney fees are not generally awarded unless the party requesting such fees has established the inability to pay" 651 So. 2d 513, 520 (Miss. 1995). In the instant case, not only did Mrs. Kirkland not assert an inability to pay, she testified that she was asking the court for reimbursement to make her husband pay the cost of the divorce. The award of attorney's fees is based on need, not retribution. In the instant case Mrs. Kirkland incurred fees of approximately $1,000 and has a yearly income of approximately $36,000, demonstrating, especially in the absence of any assertion to the contrary, an ability to pay her own attorney's fees. The chancellor was well within his discretion in denying an award of attorney's fees to Mrs. Kirkland.

For the reasons stated above, we find that the chancellor did not abuse his discretion in this case and that Mrs. Kirkland's assignments of error are without merit.

**AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. PITTMAN, J., CONCURS IN RESULT ONLY.**